LILLIE O. KING et al., complainants,

*v.*

LAURA V. KING and GIRARD TRUST COMPANY, executor of the last will and testament of BERTHA B. KING, deceased, defendants.

[Decided May 18th, 1938.]

*Messrs. Bleakly, Stockwell & Burling* (*Mr. Henry F. Stockwell* and *Mr. James D. Stockwell*), with whom was associated *Mr. Alexander McCowan* (of the Philadelphia bar), for the complainants.

*Messrs. Curry & Purnell* (*Mr. Edward T. Curry* and *Mr. George Purnell*), with whom was associated *Mr. Edward J. Colgan,* of the firm of *Karr & Colgan* (of the Maryland bar), for the defendant Laura V. King.

*Messrs. Boyle & Archer* (*Mr. F. Morse Archer, Jr.*), for the defendant Girard Trust Compay.

Davis, V. C. (Orally.)

The bill in this cause is filed for the purpose of determining the intent of Bertha B. King, the testatrix, in the will made by her dated January 18th, 1934, in which will she disposed of her estate by first directing the payment of her debts, then a legacy of $5,000 to her sister, Laura V. King, then three small legacies, one to Ella Watson, another to Emma French, and another to Edna Shutz. None of the latter are relatives of the testatrix. She then provided by the third paragraph of her will that:

"All the rest, residue and remainder of my estate of whatsoever kind, whether real, personal, or mixed, and wheresoever situate, and whether now owned or hereafter acquired by me, I give, devise, bequeath, limit, and appoint absolutely unto my beloved husband, Albert S. King, and unto the heirs, executors, administrators and assigns forever of my said husband."

Bertha B. King survived her husband, Albert S. King, for about a year after his death. In 1931 Albert S. King, the husband of Bertha B. King, executed his will, and shortly before the execution of that will he executed a deed of trust to the Girard Trust Company, which deed of trust is dated September 9th, 1931, and in that deed he made provision for a trust fund for the benefit of his wife, as I recall the testimony, of something over $100,000, which trust fund, after the decease of his wife, should be disposed of by the Trust Company for the benefit of his sisters and his nephews and nieces. No children were born of Mr. and Mrs. King. Mrs. King had one sister, Laura V. King, who is still living. Mrs. Laura V. King's husband was not a relative of Albert King, the husband of Bertha King. Both families, however, appear to have been residents of Baltimore. Laura V. King's husband was a dentist; Bertha B. King's husband was a business man who had, according to the testimony, acquired a considerable estate through his business operations and his investments.

It appears that the wills of both Albert S. King and Bertha B. King were prepared by an attorney connected with the Girard Trust Company. At any rate, the will of Bertha B.

King was prepared by a Mr. Tuttle, a member of the bar of the State of Pennsylvania, as well as the State of New York, and he was an officer of the Girard Trust Company.

The question which is presented by the bill filed in this case by the next of kin and heirs-at-law of Albert S. King is whether, under the third paragraph of the will of Bertha B. King, they became entitled to her residuary estate upon the death of Bertha B. King by reason of the language used in the will, or because of the intention of Bertha B. King that that should be the effect of her will.

Certain testimony has been offered on behalf of the complaints by which it is sought to determine the question of the intention of Bertha B. King from statements made by her to persons living near her in Riverton, New Jersey. It is contended on the part of the complainants that this testimony is admissible for the purpose of showing the intent of the testatrix, and some of this testimony produced on the part of the complainants has been met by certain evidence on the part of the defendants. To justify the contention by the complainants that Mrs. King had no intention that her sister should have anything more than the general legacy of $5,000 provided in the will, certain witnesses testified as to the attitude of Mrs. Bertha B. King towards her sister which, undoubtedly, was intended to create the impression she had been so far estranged by reason of some controversy which took place in 1910 concerning the disposition of the estate of the mother of these sisters, and going further back to perhaps 1905, when, it was said, the testatrix was displeased because of the alleged habits of Mrs. Laura V. King concerning the use of intoxicants. Without deciding upon the competency of this testimony, I am discussing it merely to give a picture of the situation. But admitting, solely for the purpose of argument, that it is competent, there is nothing in the conduct of Mrs. Bertha B. King after the death of her husband, or for some time before that time, that indicated that she was so far estranged from Laura V. King, her sister, that they had lost affection for each other. In this case, according to the testimony of Miss French, who was a companion to Bertha B. King, as well as some of the other wit-

nesses who had the opportunity of observing both of these sisters from time to time, I am convinced they were not so far estranged as certain witnesses sought to indicate. Mrs. Bertha B. King, in October, 1936, a few months after her husband's death, moved to Baltimore, the same city in which her sister resided. Apparently neither of them was in good health; they visited each other, and embraced when they met; it cannot be denied that they showed considerable affection toward each other. There were no quarrels, according to the witnesses, and I am satisfied testatrix had reached the period in her life, perhaps some time before, when such incidents as may have caused remarks attributed to Bertha B. King in the 'more or less distant past, had been forgotten, or at least forgiven. It cannot always be determined from the remarks that one sister makes to or about another, what their deep inner feelings may be. So whether or not the testimony which has been admitted conditionally is competent, I am unable to conclude therefrom that anything that was done or said would serve to change, or explain, or amplify the express language in the will of Bertha B. King. The intention of the testatrix must, after all, be gathered from the context of the will, and under the law of this state, when Albert S. King died, the legacy to him lapsed. The language of paragraph three, in which the testatrix said, "I give, devise, bequeath, limit and appoint absolutely unto my beloved husband, Albert S. King, and unto the heirs, executors, administrators and assigns forever of my said husband," the rest, residue and remainder of the estate, is free of any ambiguity which calls upon me to go outside the will.

The cases in this state hold that the words there used are words of limitation and not of substitution. It is urged upon the part of the complainants that because this same language was not used making the other bequests, that circumstance creates a situation which would give rise to the necessity of having the will construed. I take no such view of the will. It is not for the court to make a will for the testatrix; and where the will on its face is entirely free of language having a doubtful significance the court may not go beyond the will itself in order to give to clear and unambiguous language a

meaning different from its established legal import, nor do I think that a construction of the will, as suggested in this case, should depend upon statements made by the testatrix, after the making of the will.

My conclusion is that upon the death of Albert S. King there was a lapse, as far as the disposition of the residuary estate of testatrix was concerned, and that upon this lapse the testatrix died intestate as to that estate and the same goes to her sister, Laura V. King, her only next of kin and heir-at-law.